EX PARTE MONT BRIDGES.

No. 17234.   Delivered October 17, 1934.
Rehearing Denied October 31, 1934.
Reported in 75 S. W. (2d) 270.

The opinion states the case.

*T. L. Price,* of Post and *Bledsoe, Crenshaw & Dupree,* of Lubbock, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—This is an appeal from the order of the district judge denying bail for the murder of J. Donaldson.

Before indictment relator was granted bail by an order of the court. However, before bond was made an indictment was returned against him.

By agreement the evidence given on the first as well as on the present hearing is before the court.

By separate indictment relator was charged with the murder of Bertha Gordon and Jay Donaldson. The evidence in the two cases is identical.

According to the testimony of Mrs. Susie Gordon, mother of the deceased, Bertha Gordon, during the month of March or April, 1934, the relator came to her residence and while there made threats against Jay Donaldson. Later, a short time before the tragedy, relator came to the Gordon home and asked for Jay Donaldson, Dr. Kitchen and Ed Frazier. He said to Mrs. Gordon that she and Bertha could make it easier to live if they would go to New Mexico and help him handle counterfeit money. In the afternoon of the day of the homicide, relator was again at the Gordon home. While talking to Mrs. Gordon, Donaldson and Bertha Gordon came in. Relator and Donaldson retired to the back room. Upon their return relator said they were going to get some gas and would be back in a few minutes. Donaldson and Bertha Gordon were not seen alive again by the witness. The witness said that she had heard no threats made by relator against the parties named above since the last of March or the first of April; that when relator, Donaldson and Bertha Gordon left they were all in good humor.

After procuring some ice, Donaldson stating that they were going to have a beer party, relator, Bertha Gordon and Donaldson appeared at the home of Charles Miller some five miles from Post, Texas. While the parties sat in their automobile at the home of Miller, there was an argument over the fact that Donaldson had danced with the ex-wife of the relator. The argument seems to have developed into a quarrel and Miller requested them to leave his premises. A short time after the parties had left Miller's house, he heard the report of four pistol shots. Before leaving Miller's place and during the argument relator said: "I will kill the whole G— d— bunch of you." He reached back in his seat and picked up something wrapped in a brown paper. Miller could not determine what was in the package. Bertha Gordon took hold of the relator and said: "I know you can do it but don't do it here." According to Miller, the quarrel or argument continued as long as they were within his hearing.

According to the witness Combs, relator appeared later in the evening and had a conversation with the witness who conducted a moving-picture show at Post. Relator said that there had been a murder committed out on the highway. The witness asked: "Who is it?" Relator replied: "Jay Donaldson and the Gordon girl." Relator further replied to an inquiry that Donaldson shot the girl and then shot himself. Relator wanted a man named Justice to get the sheriff and also fix a

list for him (relator) to sign to the effect that he came and reported the killing. Relator said that he, Donaldson and Bertha Gordon were coming towards town and a car came up to them; that they got to arguing and Donaldson grabbed the relator's gun; that during the scuffle for the gun both Donaldson and Bertha Gordon were killed; that their bodies were about three miles out on the highway. Combs testified that he went out on the highway and found the bodies; that Donaldson was lying upon the ground and Bertha Gordon's body was lying with the head to the north and the feet to the south between Donaldson's knees. Both bodies were on their backs. Bertha Gordon's clothes were not disturbed. Her dress was down to its full length. In the course of the conversation the relator declared his innocence. According to Combs, on the following morning he visited the premises and saw where a car had gone in a lane about half a mile west of where the bodies were found; that there were tracks of a large man in the lane angling towards the bodies. These tracks were made after the car tracks had been made.

According to the witness Holman, the bodies were lying in substantially the same position as described by the witness Combs. A .45 calibre Colt single-action six-shooter was lying a couple of feet northeast from Donaldson's head. Four of the chambers of the pistol had been discharged. Appellant said that the pistol used in the homicide belonged to him but that he had nothing to do with the killing.

The witness Cato examined the car in which Donaldson and Bertha Gordon were riding on the night of the killing. One bullet had struck a bow on the right-hand side of the car. The bullet struck on the inside of the car and went outwards. There was a bullet hole in the door on the right-hand side of the car. There was a bullet down in the seat back in the right-hand corner of the car. A .45 calibre bullet was also found in the car.

Mason, the undertaker, testified that he examined the bodies of Jay Donaldson and Bertha Gordon; that Donaldson was shot between the second and third ribs on the left-side a little over his heart, and the bullet came out just under the ribs on the right side. Another shot hit him on the left corner of his mouth and came out just by the ear on the left-hand side. These were the only two bullet wounds upon the body of Donaldson. "One bullet struck Bertha Gordon right in on the top of the left shoulder and the other one was just back of there about three inches, near the shoulder back of the arm." The bullets "seemed

to come from a downward direction about 45 degrees angle." Neither of the bullets came out of her body, and no other bullet wounds were found save those described.

Based upon the evidence, counsel for the relator have ably presented their views contending that the evidence is such as to preclude the authority of the trial court to deny bail. We are led by the evidence, in the light of the precedents, to conclude that it is not the duty nor the privilege of this court under the facts to annul the finding of the trial judge. While at the home of Miller it was the relator who was promoting the quarrel and Donaldson who was endeavoring by apologies to soothe the ire of the relator. There were two wounds upon Donaldson's body. That either of them would have killed is combatted by no evidence. The weapon with which the homicide was committed belonged to the relator. That he was aggrieved at Donaldson is proved without contradiction.

Our study of the evidence leads us to conclude that we are not justified in overturning the judgment of the learned trial judge who sat in the hearing and formed the conclusion that his duty required that he refuse to authorize the release of the relator on bail.

The relator is therefore denied bail.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—In our original opinion we discussed the facts more than we usually do when bail is denied. We have again gone over the record carefully. By various witnesses it was established that appellant, shortly before the killing, was in a car with the man and woman he is charged with killing. The death of each was caused by shots from appellant's pistol. He was with them when they were killed. No one else seems to have been present. Appellant told two stories as to how the killing took place. The first story seems combated by the physical facts. We think we correctly concluded it our duty to uphold the action of the trial court in denying bail.

The motion for rehearing is overruled.

*Overruled.*